■ FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant, et al., Plaintiff, v MICHAEL FORTE et al., Defendants, and LAMB ASSOCIATES, INC., et al., Respondents.—In an action, *inter alia,* for a deficiency judgment, the plaintiff Federal Deposit Insurance Corporation appeals from an order of the Supreme Court, Nassau County (Kutner, J.), entered July 24, 1986, which, after a hearing, denied its application for a deficiency judgment and directed that the defendants Miriam Gluckstal, Alfred E. Gluckstal and Lamb Associates, Inc., pay only the sum of $5,000 as reasonable attorney's fees.

Ordered that the order is affirmed, with costs to the respondents Lamb Associates, Inc., and Miriam Gluckstal.

The instant appeal emanates from an action commenced by the Federal Deposit Insurance Corporation (hereinafter FDIC) and the mortgagee, Rhoda Sugarman, to foreclose the underlying mortgage. Additionally, the FDIC asserted a claim for a deficiency judgment against the guarantors, the defendants Miriam and Alfred E. Gluckstal, and the principal debtor, the defendant Lamb Associates, Inc., in the event that the FDIC's share of the proceeds from the sale of the realty was insufficient to repay the amount due on the loan. In June 1979 a judgment of foreclosure and sale was entered in favor of the FDIC and Sugarman. That judgment included a directive that the FDIC "recover of the defendants LAMB ASSOCIATES, INC., ALFRED E. GLUCKSTAL and MIRIAM GLUCKSTAL the whole deficiency or so much thereof as the court may determine to be just and equitable of the residue of the debt remaining due and payable to plaintiff and satisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made and the amount thereof is determined and awarded by an order of this court as provided by law".

It subsequently transpired that the proceeds realized upon foreclosure sale of the realty subject to the mortgage were less than the sums due and owing on the secured note. A hearing was ordered pursuant to RPAPL 1371 with respect to the fair and reasonable value of the mortgaged premises and the reasonableness of the attorney's fees *(see, Federal Deposit Ins. Corp. v Forte,* 109 Misc 2d 546). On appeal, this court ruled that UCC 9-504 (3) and its standard of commercial reasonableness should govern *(Federal Deposit Ins. Corp. v Forte,* 94 AD2d 59). This court specifically rejected the FDIC's claim that a judicial sale is deemed conclusively to meet the standard of commercial reasonableness, noting that such a presumption is permitted only when the sale has judicial approval. In the instant case, the requisite judicial approval was lacking. The judgment directing the sale merely prescribed the form of sale and not the manner in which it was to be conducted, including the requisite publication of the sale and the existence of bona fide competitive bidding. Under the circumstances, a hearing was ordered to elicit further facts regarding the sale. By way of a further guideline, this court noted the following:

"In determining whether the sale of collateral is commercially reasonable, '[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner' (Uniform Commercial Code, § 9-507, subd [2]). However, a wide or marked discrepancy between the sale price and the value of the property will trigger close scrutiny even in the face of procedural propriety *(Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.,* 81 AD2d 168) * * *.

"Delay is another factor for consideration on the issue of commercial reasonableness *(Federal Deposit Ins. Corp. v Herald Sq. Fabrics, supra,* p 183). Here, the judgment directing the sale was dated June 11, 1979, but the sale did not take place until June 30, 1980. Further inquiry is necessary * * *.

"A secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement (Uniform Commercial Code, § 1-102, subd [3]). While 'the parties may by agreement determine the standards by which the performance of such obligations is to be measured' (Uniform Commercial Code, § 1-102, subd [3]), the parties may not agree to relieve the secured party from all responsibility with respect to the collateral *(Federal Deposit Ins. Corp. v Marino*

*Corp.,* 74 AD2d 620; *Executive Bank of Fort Lauderdale v Tighe,* 66 AD2d 70)" *(Federal Deposit Ins. Corp. v Forte, supra,* at 66-67).

A hearing was thereupon conducted in accordance with the standards enunciated by this court. The hearing court concluded that the FDIC had not conducted the sale in a commercially reasonable manner and that it was not entitled to a deficiency judgment.

It has been held that whether a particular procedure concerning the sale of collateral which secures a loan is commercially reasonable is a question of fact *(National Bank v Gregory,* 85 AD2d 839). Furthermore, "[a] secured party seeking a deficiency judgment from the debtor after sale of the collateral bears the burden of showing that the sale was made in a 'commercially reasonable' manner" *(Mack Fin. Corp. v Knoud,* 98 AD2d 713, 714; *accord, First Natl. Bank v G. F. Clear, Inc.,* 93 AD2d 925, 926).

On the basis of the evidence adduced at the hearing, we conclude that the FDIC has failed to sustain this burden as a result of which its application for a deficiency judgment was properly denied. In proffering the opinion that the fair market value of the subject property on June 20, 1980, was $175,000, the plaintiff's expert failed to account for the fact that the property had previously been sold for the sums of $250,000 and $346,000. In view of this fact, as well as the subject property's location, the sales of similar properties, existing zoning laws and real estate taxes, the respondents' expert's appraisal of the property at a value of $370,000 constitutes a more realistic appraisal. The property was ultimately sold to the Taxco Holding Corporation for $165,000. Significantly, the defendant Michael Forte, the person who then held title to the property, and who was in default under the mortgage, was the principal of the corporate purchaser. The mortgage agreement unequivocally provided that in the event the mortgage on the realty was foreclosed and sold for less than the debt secured by the mortgage, no claim for a deficiency could be asserted against the mortgagor. As the hearing court aptly noted, the auction sale resulted in a substantial windfall for the defendant Forte.

Given the circumstances surrounding the sale, the fact that a year elapsed between the judgment of the foreclosure and the sale and the substantial discrepancy between the sale price and the fair market value of the property, we conclude that the foreclosure sale was not conducted in a commercially reasonable manner.

At the conclusion of the hearing, the parties stipulated that the reasonable value of the services rendered by counsel was $20,000, of which $5,000 was attributable to the services rendered to reduce the collateral to cash. The balance represented counsel fees incurred in attempting to obtain a deficiency judgment. Inasmuch as the FDIC is not entitled to a deficiency judgment, its award of counsel fees was properly limited to $5,000. Bracken, J. P., Weinstein and Kooper, JJ., concur.

Rubin, J., dissents in part and votes to modify the order appealed from, by granting the plaintiff's motion for a deficiency judgment and increasing the award of attorney's fees to $20,000, with the following memorandum: At the hearing held pursuant to this court's decision in *Federal Deposit Ins. Corp. v Forte* (94 AD2d 59) to determine whether the plaintiff Federal Deposit Insurance Corporation (hereinafter FDIC) had disposed of the collateral in a commercially reasonable manner, the FDIC, as the secured party, had the burden of proof *(Mack Fin. Corp. v Knoud,* 98 AD2d 713, 714). In reviewing the reasonableness of the FDIC's disposition of the collateral, the form of which had been previously judicially prescribed, the court should not attempt to further investigate the individual aspects of the sale except to determine whether the FDIC followed the approved procedures or obtained the approval of these procedures through overreaching or collusion *(see, Bryant v American Natl. Bank & Trust Co.,* 407 F Supp 360).

In meeting its burden, the FDIC established that it had fully complied with all of the terms prescribed in the judgment of foreclosure and sale. The foreclosure sale was properly published in the Westbury Times in accordance with the judgment and RPAPL 231 which states no requirement as to size or circulation of the newspaper *(see, Guardian Fed. Sav. & Loan Assn. v Horse-Hawk Holding Corp.,* 72 AD2d 737). The sale was held as advertised and bona fide competitive bidding was evidenced by the number of people in attendance at the sale and the gradual increase from the initial bid of $1,000 to the ultimately accepted bid of $165,000 *(cf., Buttermark Plumbing & Heating Corp. v Sagarese,* 119 AD2d 540). Although there is some evidence that the FDIC had delayed the sale, there was no evidence that this delay resulted in a decreased sale price. During the interim period between the date the judgment of foreclosure and sale was granted and the date of the public sale, neither had this parcel of real property depreciated in value nor had the market deteriorated for

parcels with such a specialized nature and of limited interest to those inclined to bid at forced sales. In fact, the evidence tended to show that if anything, the delay only served to increase the price ultimately realized upon the sale.

The majority's emphasis on the fact Forte received a substantial windfall when his corporation was the successful bidder at the foreclosure sale is misplaced. Forte was the owner of record of the subject real property, who was in default under the mortgage foreclosed by the plaintiff FDIC and mortgagee Rhoda Sugarman. Alfred Gluckstal's half interest, as mortgagee, in the note and mortgage on Forte's realty had been assigned to FDIC's predecessor as collateral for a separate debt owed by the defendant Lamb Associates, Inc. and guaranteed by the defendants Miriam and Alfred E. Gluckstal *(see, Federal Deposit Ins. Corp. v Forte, supra,* at 60-61). Forte's fortuitous windfall was attributable to the provision in the mortgage agreement barring the mortgagee and assignees from asserting a claim for a deficiency against the mortgagor in the event the realty was foreclosed and sold for less than the debt secured by the mortgage, rather than to any self-dealing on the part of FDIC *(cf., Central Budget Corp. v Garrett,* 48 AD2d 825; *Banker's Trust Co. v Steenburn,* 95 Misc 2d 967).

In the instant case, the proof adduced at the hearing amply demonstrates that the plaintiff FDIC complied with all the terms prescribed in the judgment of foreclosure and sale and there is no evidence that it obtained the judicial prescriptions through collusion or overreaching. Consequently, I find that the plaintiff FDIC's disposition of the collateral was commercially reasonable.

Assuming, arguendo, that the discrepancy between the actual sale price and the respondents' expert's appraisal of the property is sufficient to trigger "close scrutiny" of the sale *(see, Federal Deposit Ins. Corp. v Forte,* 94 AD2d 59, 66, *supra),* there simply is no basis for concluding that the sale was not commercially reasonable. Property offered at a forced sale frequently produces a price substantially less than market value *(Guardian Loan Co. v Early,* 47 NY2d 515, 518), because such sales are of little interest to the public and those who bid seek to buy at bargain prices *(see, Polish Natl. Alliance v White Eagle Hall Co.,* 98 AD2d 400, 409). Here, the sale at issue realized approximately 45% of the market value of the property. In similar contexts, courts have denied applications to set aside judicial sales of real property involving greater disproportionate percentages, applying the rule that mere

inadequacy of price is insufficient to vacate a judicial foreclosure sale unless fraud, collusion, mistake or misconduct casts suspicion on the sale or unless the price is so inadequate as to shock the court's conscience *(see, e.g., Polish Natl. Alliance v White Eagle Hall Co.,* 98 AD2d 400, *supra* [judicial sale realized 37% of alleged market value of the property]; *Weir v United States,* 339 F2d 82 [30%]; *Magnolia Springs Apts. v United States,* 323 F2d 726 [34%]; *Matter of Bachner,* 82 Misc 2d 107 [41%]; *see also,* Stanley, *The Effect of Economic Depression Upon Foreclosure,* 27 Ky L J 365, 382-383 [suggesting one third as an appropriate guideline]). Similarly, in this case, the fact "that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner" (UCC 9-507 [2]). Accordingly, the FDIC is entitled to a deficiency judgment against the defendants Gluckstal and Lamb Associates, Inc.